UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x

DEMETRIA RENEE JENKINS AUGUGLIARO,

               Plaintiff,           **MEMORANDUM & ORDER**
                                      20-CV-5302(EK)

       -against-

COMMISSIONER OF SOCIAL SECURITY,

               Defendant.

------------------------------------x

ERIC KOMITEE, United States District Judge:

        Plaintiff Demetria Augugliaro challenges the Social Security Administration's denial of her claim for disability insurance benefits.  Before the court are the parties' cross-motions for judgment on the pleadings.  For the following reasons, I grant Augugliaro's motion and deny the Commissioner's motion.

## I.  Background

### A.  Procedural Background

        On January 4, 2016, Augugliaro applied for disability benefits, alleging a disability onset date of November 4, 2015, at the age of 45.  Administrative Transcript ("Tr.") 10, 250, 291, ECF. No. 11.  The agency denied her claim in April of 2016, and denied it again upon reconsideration in August.  *Id*. at 88-91.  An administrative law judge ("ALJ") held hearings on her claim in July and November of 2018.  *Id*. at 1613-47.  The ALJ

found that Augugliaro was not disabled and therefore not entitled to disability benefits. *Id*. at 10-22. The agency's Appeals Council denied Augugliaro's request for review of the ALJ's decision, rendering it final. *Id*. at 1-5. Augugliaro timely sought review of that decision in this court. ECF No. 1.

## B.    The ALJ's Disability Evaluation

Under the Social Security Act, "disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's regulations require ALJs to follow a five-step sequence in evaluating disability claims. 20 C.F.R. § 404.1520(a)(4).

First, the ALJ determines whether the claimant is engaged in substantial gainful activity. *Id*. § 404.1520(a)(4)(i), (b). If not, at step two the ALJ evaluates whether the claimant has a "severe impairment" — *i.e.*, an impairment or combination of impairments that "significantly limits" her "physical or mental ability to do basic work activities" — that has lasted or is expected to last for twelve months or longer. *Id*. §§ 404.1509, 404.1520(a)(4)(ii), (c). If the ALJ identifies a severe impairment, at step three she must determine whether it meets or equals one of the impairments

listed in Appendix 1 of the regulations — the "Listed Impairments." *Id.* § 404.1520(d); *see also id.* pt. 404, subpt. P, app. 1. If it does, the ALJ will deem the applicant disabled. *Id.* § 404.1520(a)(4)(iii).

Here, the ALJ found that Auguglario had not engaged in substantial gainful activity since the alleged onset date. Tr. 13. The ALJ found that Auguglairo had several severe impairments: bradycardia/tachycardia with mitral regurgitation, mild tricuspid regurgitation, and trace aortic regurgitation; migraine headaches; lumbrosacral/cervical strain; and arthritis. Tr. at 13. The ALJ found two non-severe physical impairments, myalgias and ankle problems, and two non-severe mental impairments, major depressive disorder and PTSD. *Id.*

The ALJ concluded, however, that Augugliaro's asserted mental health challenges — depression and post-traumatic stress disorder — were not severe. She found that these impairments, "considered singly or in combination," gave rise only to mild limitations on Augugliaro's ability to perform "basic mental work activities," as assessed through a series of criteria enumerated by the agency. *Id.*

The ALJ ultimately concluded that Augugliaro's severe impairments did not, jointly or singly, rise to the level of a Listed Impairment. *Id.* at 15-16.

When the ALJ finds that the claimant has severe impairments that do not meet the requirements of the Listings, he must determine the claimant's residual functional capacity ("RFC"), 20 C.F.R. § 404.1520(a)(4)(iv), which is the most the claimant can do in a work setting notwithstanding her limitations. *Id.* § 404.1545(a)(1).   The ALJ concluded here that Augugliaro had the RFC to perform "light work as defined in 20 C.F.R. § 404.1567(b) except the claimant can frequently reach, handle, finger, and push and pull foot controls, occasionally climb stairs, balance, stoop, kneel, and crouch, and never climb ladders, ropes, or scaffolds or crawl."  Tr. 16.  The ALJ also found that she should "avoid unprotected heights" and that she can have "only occasional exposure to dusts, fumes, gases, temperature extremes, vibrations, humidity, and wetness."  *Id.* The RFC did not include any restrictions flowing from the mental impairments that the ALJ had held to be non-severe.

At step four, the ALJ considers whether, in light of the RFC determination, the claimant can perform "past relevant work."  20 C.F.R. § 404.1520(f).  The ALJ below found that Augugliaro is capable of performing her prior work as a medical assistant because the work does not require any activities precluded by her RFC.  Tr. 20.

At step five, the ALJ evaluates whether the claimant can perform jobs existing in significant numbers in the national

economy.  20 C.F.R. § 404.1520(a)(4)(v), (g).  The ALJ consulted
with a vocational expert and determined that Augugliaro could
perform such jobs, including as an inspector, plastic products;
an assembler, small products; and as a ticketer.  Tr. 21.  The
ALJ also found that she was capable of performing her past
relevant work as a medical assistant.  *Id.* at 20.

Given that determination, the ALJ concluded that
Augugliaro was not disabled.  *Id.* at 22.

## II.  Standard of Review

A district court has jurisdiction to review the final
judgment of the Commissioner denying an application for Social
Security disability benefits.  42 U.S.C. § 405(g).  The review
is limited to two questions: whether substantial evidence
supports the Commissioner's decision, and whether the
Commissioner applied the correct legal standards.  *Moran v.
Astrue*, 569 F.3d 108, 112 (2d Cir. 2009).

"Substantial evidence means more than a mere
scintilla.  It means such relevant evidence as a reasonable mind
might accept as adequate to support a conclusion."  *Burgess v.
Astrue*, 537 F.3d 117, 127 (2d Cir. 2008).[1]  "[I]f supported by

---

[1] Unless otherwise noted, when quoting judicial decisions this order
accepts all alterations and omits all citations, footnotes, and internal
quotation marks.

substantial evidence," the Commissioner's factual findings "shall be conclusive."  42 U.S.C. § 405(g).

### III.  Discussion

The ALJ's RFC analysis was premised on legal error, because it failed to take into account her own determination of the limitations Augugliaro suffers from as a result of her medically-determinable depression and PTSD.  Augugliaro's three remaining arguments, as addressed in turn below, are without merit.

### A.   Effect of Non-severe Mental Impairments on the RFC Determination

Augugliaro argues that the ALJ erred by failing to "include any limitations for [her] mental impairments in her RFC."  Pl. Reply in Supp. of Pl.'s Mot. for J. on the Pleadings ("Pl. Rep.") 2-3, ECF. No. 19.  The ALJ provided no explanation for why Augugliaro's depression and PTSD "had no impact on work in the RFC" despite finding mild limitations based on those impairments in step two.  *Id.*  ALJs are required to "account for limitations imposed by both severe and nonsevere impairments," including mental impairments.  *Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012).

The ALJ's decision does not allow for meaningful review of her determination not to account for any mental impairment in the RFC determination.  All the ALJ wrote on the

subject was: "the following residual functioning capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function analysis."  Tr. 15. This appeared in Section Three of the ALJ's analysis, dealing with whether her impairments meet a Listed Impairment, not the RFC determination itself.  *Id*.

That conclusory note is insufficient.  "[T]he ALJ failed to explain how these non-severe impairments informed her determination of plaintiff's RFC.  In fact, there is no mention of any of these conditions in the ALJ's step four analysis." *Schmidt v. Comm. Of Social Sec.*, No. 20-CV-3594, 2022 WL 1540054, at *3 (E.D.N.Y. May 16, 2022).  That failure "was legal error and remand is warranted for this reason.  On remand, the ALJ should consider whether additional medical opinion evidence regarding the functional limitations caused by the non-severe impairments is warranted."  *Id*. at *4.

This case is fundamentally different from cases in which the ALJ finds non-severe impairments that "did not result in any continuous functional limitations."  *Spinato v. Comm'r of Soc. Sec.*, No. 20-CV-3952 (EK), 2023 WL 8565536, at *5 (E.D.N.Y. Dec. 11, 2023).  In such cases, omitting analysis of the non-severe impairments from the RFC determination is "harmless error," because the impairments did not "contribute[] to any functional limitations."  *Id*.  But here, the ALJ acknowledges

that Augugliaro's major depressive disorder and PTSD limit her ability to function (at least mildly) as to all four paragraph B criteria.  Tr. 13-15.  The RFC analysis should take those limitations into account more explicitly, one way or another.

**B.    Non-Severe Mental Impairments**

Augugliaro argues that the ALJ erred even before undertaking her RFC determination when she found at step two that Augugliaro's depression and PTSD, taken separately or together, were non-severe impairments.  But the record reflects several examples of reports substantiating the ALJ's conclusion. Two doctors found that Augugliaro's "memory appeared to be grossly intact."  *Id.* at 972, 1117, 1126.  Both a clinical psychologist and Augugliaro's primary care physician opined that she had good eye-contact, normal mood, normal affect, and clear, spontaneous speech.  *See id.* at 813, 10523.  And Augugliaro herself acknowledged that although she experiences fatigue, she "is still able to function and get things done."  *Id*. at 1082. Taken as a whole, there is substantial evidence in the record to support the ALJ's findings and thus her conclusion that Augugliaro's mental impairments — though medically determinable and requiring attention in the RFC determination — are not severe in the meaning of 20 C.F.R. § 416.922(a).

C.    **Syncopal Episodes**

Augugliaro next argues that the ALJ erred at step three by finding that her syncope and arrhythmias did not meet or medically equal the severity of Listing 4.05 (Recurrent Arrhythmias).  20 C.F.R. §404, Subpt. P., App.1 § 4.05. Pursuant to that listing, if a syncope is a cardiac syncope or "near" syncope it may meet the requirements, whereas non-cardiac syncopes do not.  As the ALJ explained, two of Augugliaro's examining physicians tested her and concluded that her syncope was vasovagal, rather than cardiac in nature.  *Id.* at 760 (Dr. Joseph Falsone diagnosed her using positive tilt table test), 1281-82 (Dr. Daniel Friedman, a cardiologist, similarly diagnosed her with vasovagal syncope following a consultation and physical exam).  As such, the ALJ's conclusion that Augugliaro's syncope was vasovagal rather than a result of her cardiac impairments was supported by substantial evidence.

D.    **The Weight of Physicians' Opinions in the RFC Determination**

Finally, Augugliaro challenges the ALJ's RFC determination on a second basis: that the ALJ gave insufficient weight to three physicians' opinions and overweighted Dr. Beverly Yamour's opinion.  *Id*. at 22-23.  The ALJ relied mostly on Dr. Yamour's opinion regarding Augugliaro's physical capabilities because it was "generally supported by and consistent with the relevant totality of the record."  *Id*. at

19.  She discounted three other doctors' opinions because they each contained internal inconsistencies that diminished their force and trustworthiness.  *Id*. at 14-15, 19.  Specifically, each doctor simultaneously asserted that Augugliaro's impairments were "severe" yet explicitly found that they had insufficient evidence to properly assess those same impairments. *Id*. at 73 (Dr. Brian Grover's opinion), 83 (Dr. Sydney Chhabra's opinion), 80 (Dr. Robert Pyle's opinion).  Giving diminished weight to internally inconsistent opinions is perfectly within the ALJ's purview.  *Micheli v. Astrue*, 501 F.App'x 26, 28 (2d Cir. 2012) (ALJ "properly declined to accord controlling weight to the opinion of" plaintiff's physician where the opinion was "internally inconsistent and inconsistent with other substantial record evidence").

## IV.  Conclusion

For the reasons set forth above, the Court grants Augugliaro's motion for judgment on the pleadings and denies the Commissioner's motion. The ALJ's November 14, 2019, decision is

therefore vacated, and the matter is remanded for further administrative proceedings consistent with this Order.

       SO ORDERED.


                            /s/ Eric Komitee
                         ERIC KOMITEE
                         United States District Judge


Dated:     February 28, 2024
            Brooklyn, New York